IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**BILLIE JOE CHAPMAN,**

    Petitioner,

v.                                                                       No. 1:24-cv-01106-STA-jay

**DEMETRIC GODFREY, WARDEN,**

    Respondent.

**ORDER DENYING MOTION TO APPOINT
COUNSEL (ECF NO. 63) AND MOTION TO RECUSE (ECF NO. 70), CONSTRUING
AMENDED PETITION (ECF NO. 69) AS A MOTION TO AMEND AND DENYING
LEAVE TO AMEND § 2254 PETITION, DENYING § 2254 PETITION, DENYING
CERTIFICATE OF APPEALABILITY, CERTIFYING APPEAL NOT TAKEN IN
GOOD FAITH, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Billie Joe Chapman has filed a habeas corpus petition (the "§ 2254 Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Chapman has also filed (1) a motion to appoint counsel (ECF No. 63), (2) a motion to recuse the undersigned (ECF No. 70), and a proposed amended § 2254 petition (ECF No. 69), which the Court construes as a motion to amend. For the following reasons, Chapman's motions and the § 2254 Petition are **DENIED**.

**STATE COURT PROCEDURAL BACKGROUND**

On February 1, 2021, a Madison County grand jury returned an indictment charging Chapman with theft of property over $1,000, vandalism under $1,000, and burglary. (ECF No. 26-11 at PageID 516-19.) On August 2, 2021, another Madison County grand jury returned an indictment charging Chapman with aggravated burglary, theft of property over $2,500, vandalism under $1,000, and sixteen (16) counts of being a convicted felon in possession of a firearm. (*Id.* at PageID 520-39.)

The trial court referred Chapman to Pathways of Tennessee, Inc., "for an evaluation to determine competency to stand trial, mental condition at the time of the crime[,] and diminished

capacity." (ECF No. 26-3 at PageID 408.) On May 14, 2021, Pathways submitted a letter to the trial court indicating that Chapman was competent to stand trial, understood "the nature or wrongfulness" of his acts at the time he committed them, and did not have "a mental disease and/or defect that interfered wit his capacity to form the requisite culpable mental state(s)." (*Id.*)

On September 7, 2021, Chapman appeared before the trial court for guilty plea proceedings. (*Id.* at PageID 410.) Chapman pled guilty to all charges set forth above. (*Id.* at PageID 420-21.) Prior to entering his plea, Chapman indicated that he was not impaired by any alcohol, narcotics, or other drugs or medication. (*Id.* at PageID 415.) Chapman understood his trial rights and understood that he was giving them up by pleading guilty. (*Id.* at PageID 415-18.) When asked by the trial judge if his guilty plea was "being entered freely and voluntarily," Chapman responded, "Yes." (*Id.* at PageID 419.) Chapman indicated that no threats, promises, or force had been applied to make him plead guilty. (*Id.* at PageID 420.) Chapman fully understood what he was doing by pleading guilty. (*Id.* at PageID 422.) Chapman understood his sentencing exposure. (*Id.* at PageID 422-27.) Chapman did not have any questions and noted that he wanted to go forward with his guilty pleas. (*Id.* at PageID 428-29.) The trial court sentenced Chapman to a "total effective sentence of 13 years in the Tennessee Department of Corrections as a Range 3 persistent offender." (*Id.* at PageID 436.) The trial court entered judgments on September 10, 2021. (ECF No. 26-11 at PageID 546-87.)

On January 28, 2022, Chapman returned to the state court and filed what he called a petition for a writ of habeas corpus. (ECF No. 26-1 at PageID 206-15.) On January 31, 2022, the State filed a response and requested that Chapman's pleading be treated as a petition for post-conviction relief because Chapman was challenging the voluntariness of his guilty plea. (*Id.* at PageID 219-21.) On February 16, 2022, the post-conviction court noted that Chapman's pleading would be

2

treated as a petition for post-conviction relief and appointed counsel to represent Chapman. (*Id.* at PageID 222-23.)

The post-conviction court conducted an evidentiary hearing for Chapman's petition on August 22, 2022. (ECF No. 26-2.) Chapman's trial counsel and Chapman himself testified at the hearing. (*See generally id.*) On September 13, 2022, the post-conviction court denied Chapman's post-conviction petition. (ECF No. 26-1 at PageID 332-33, 335-36.)

Chapman appealed the denial of his post-conviction petition to the Tennessee Court of Criminal Appeals ("TCCA"). (*Id.* at PageID 337.) In his brief on appeal, Chapman raised one claim of ineffective assistance, asserting that counsel "should have made sure that [Chapman] was properly evaluated for competency and insanity." (ECF No. 26-4 at PageID 457.) The TCCA affirmed the denial of Chapman's post-conviction petition. *See Chapman v. State*, No. W2022-01333-CCA-R3-PC, 2023 WL 5572932, at *1 (Tenn. Crim. App. Aug. 29, 2023) (ECF No. 26-6.) In its opinion, the TCCA noted that Chapman "implies that he was not competent and did not understand his guilty plea." *Id.* at *6. The TCCA rejected that argument. *Id.* The TCCA rejected Chapman's *pro se* pleadings seeking rehearing on September 12, 2023. (ECF No. 26-7 at PageID 490.) On November 20, 2023, the Tennessee Supreme Court ("TSC") denied Chapman's application for permission to appeal. (ECF No. 26-10 at PageID 512.)

The record reflects that on October 23, 2023, Chapman filed a motion for the correction of an illegal sentence with the trial court. (ECF No. 26-12 at PageID 668-74.) The trial court denied that motion on June 10, 2024. (*Id.* at PageID 712-17.)

On July 22, 2024, Chapman returned to the trial court and filed a petition for a writ of habeas corpus. (*Id.* at PageID 742-47.) The trial court dismissed that petition on August 1, 2024. (ECF No. 26-13 at PageID 817-24.) The trial court denied Chapman's motions for reconsideration

3

on August 16, 2024. (*Id.* at PageID 827.) The TCCA affirmed the dismissal of Chapman's petition for a writ of habeas corpus on April 15, 2025. *See Chapman v. State*, No. W2024-01228-CCA-R3-HC, 2025 WL 1113389, at *1 (Tenn. Crim. App. Apr. 15, 2025) (ECF No. 55-1).

Chapman also filed various petitions for mandamus, all of which were denied by the state appellate courts. (ECF Nos. 26-16, 26-17, & 26-18.)

## FEDERAL HABEAS PROCEEDINGS

This is not the first § 2254 petition that Chapman has filed regarding these state criminal proceedings. Chapman filed a § 2254 petition on September 19, 2022. *See Chapman v. Wardlow*, No. 1:22-cv-01203-STA-jay, 2023 WL 9119924, at *1 (W.D. Tenn. Dec. 6, 2023). Chapman ultimately filed a second amended petition. *See id.* The Court directed Chapman to show cause "why his second amended petition should not be dismissed for failure to exhaust state court remedies." *Id.* In lieu of responding, Chapman filed numerous motions, including a motion for an extension of time to file a third amended petition. *Id.* The Court granted Chapman's motion for an extension of time and directed Chapman to file his third amended petition within 28 days. *Id.* Chapman did not do so. On December 6, 2023, the Court dismissed the second amended petition without prejudice for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure. *Id.* at *2.

Chapman filed the instant *pro se* § 2254 Petition on May 7, 2024. (ECF No. 1.) He raises the following grounds for relief: (1) his guilty plea was involuntarily entered; (2) the judges overseeing his criminal proceedings had conflicts of interest; and (3) he was forcibly committed to the Jackson General Hospital and forced to "take mind-altering drugs" for treatment. (*Id.* at PageID 2-9.)

4

After the Court granted Chapman leave to proceed *in forma pauperis* (ECF No. 6), Chapman filed a slew of various motions, including several motions to appoint counsel. On January 21, 2025, the Court addressed those motions, dismissed Chapman's conflict of interest allegations raised in Ground Two pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), and directed Respondent to respond to Grounds One and Three and file the relevant portions of the state court record. (ECF No. 22.) On February 10, 2025, Respondent filed the state court record (ECF No. 26) and a response (ECF No. 27). Respondent argues that Grounds One and Three are procedurally defaulted, Ground One lacks merit, and Ground Three is not cognizable under § 2254. (*See generally* ECF No. 27).

Chapman then filed twenty-three (23) more motions, as well as his reply (ECF No. 38) to Respondent's response. On March 21, 2025, the Court addressed Chapman's motions, warned Chapman that his filing of "numerous duplicative, redundant, and frivolous motions" was "an abuse of the judicial process and waste[d] judicial resources," and warned Chapman that the Court would not consider further motions from him. (ECF No. 53 at PageID 1250.) The Court warned Chapman that if he "continues in his abuse of the judicial process, the Court may impose sanctions against [him], including a monetary fine." (*Id.* at PageID.1251.)

Undeterred, Chapman filed three additional motions. On April 16, 2025, Respondent supplemented the state court record with the TCCA's opinion affirming the dismissal of Chapman's state habeas corpus petition. (ECF No. 55.) On September 8, 2025, the Court denied Chapman's motions and again warned Chapman that the Court would not consider further motions from him. (ECF No. 62.) The Court again warned Chapman that if he "continues in his abuse of the judicial process, the Court may impose sanctions against [him], including a $100 monetary fine per violation." (*Id.* at PageID 1346.)

On September 11, 2025, Chapman filed another motion to appoint counsel. (ECF No. 63.) On October 20, 2025, Chapman appealed the Court's September 8, 2025, Order to the United States Court of Appeals for the Sixth Circuit. (ECF No. 65.) On November 26, 2025, the Sixth Circuit dismissed Chapman's appeal for lack of jurisdiction. (ECF No. 67.)

On January 9, 2026, Chapman filed a document entitled "Petitioner's Nunc Pro Tunc Motion for Relief Pursuant to 28 U.S.C. § 2241" and a motion to recuse the undersigned. *See Chapman v. Godfrey*, No. 1:26-cv-01009-JDB-jay (W.D. Tenn.) (ECF Nos. 1 & 2). On February 5, 2026, Judge Breen construed the petition as one brought under 28 U.S.C. § 2254, noted that Chapman already had a pending § 2254 petition before this Court, and directed the Clerk to file Chapman's petition and motion in the instant action for further consideration by the undersigned. *See* Order, *id.* (ECF No. 5).

## PENDING MOTIONS

### A. Motion to Appoint Counsel

On September 11, 2025, Chapman filed a motion to appoint counsel to represent him in these proceedings. (ECF No. 63.) Chapman argues that counsel should be appointed to represent him because he is mentally disabled. (*Id.* at PageID 1348.) This is the fifth motion to appoint counsel Chapman has filed in these proceedings arguing that counsel should be appointed because of his mental disability. On January 21, 2025, the Court denied Chapman's first four motions to appoint counsel. (ECF No. 22 at PageID 190-91.) Chapman presents no reason to revisit that determination in his instant motion. Accordingly, Chapman's motion to appoint counsel (ECF No. 63) is **DENIED** for the reasons previously set forth by the Court in its January 21, 2025 Order.

6

B.      **Motion to Recuse**

Chapman has filed a third motion for the undersigned District Judge to be recused from this case. (ECF No. 70.) Chapman alleges that the undersigned is related to Judge Blake Anderson of Jackson, Tennessee. (*Id.* at PageID 1433.) Chapman contends that the undersigned is "a sympathizer towards private prison employees [and] CoreCivic," and that the undersigned "shows favoritism and does not order [these individuals] to stop the violations of mail, law library, and materials." (*Id.* at PageID 1434.) Chapman again takes issue with the fact that the undersigned dismissed Civil Action No. 1:22-cv-01203. (*Id.*) Chapman also suggests that the undersigned has refused to address Ground Two of his § 2254 Petition, alleging a conflict of interest. (*Id.*)

Under 28 U.S.C. § 4559a), a judge shall be disqualified "in any proceeding in which his impartiality might reasonably be questioned." Circumstances under which a judge must disqualify himself include circumstances where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). A judge must recuse himself if, knowing all of the circumstances, a reasonable, objective person would question the judge's impartiality. *See United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). "The standard is an objective one; hence, the judge need not recuse himself based on the subjective view of a party no matter how strongly that view is held." *Id.* (internal quotation marks and citation omitted). A judge's participation in the proceedings or prior contact with related cases cannot support a demand for recusal. *Id.* "A judge is presumed to be impartial, and a litigant seeking disqualification bears the burden of alleging facts that would lead a reasonable person to question the neutrality of the judge." *United States v. Adams*, 38 F.3d 1217, 1994 WL 589509, at *2 (6th Cir. 1994).

Chapman has failed to allege sufficient facts to meet his burden. First, the undersigned is not related to Judge Blake Anderson. Chapman also fails to allege sufficient facts to support his conclusory allegation that the undersigned is biased towards prison employees and CoreCivic. As he did in his previous two motions for recusal, Chapman argues for recusal based on the Court's dismissal of his prior § 2254 petition for failure to prosecute. (*Compare* ECF No. 54 at PageID 1252-53 and ECF No. 30 at PageID 925-27 *with* ECF No. 70 at PageID 1434.) Petitioner's dissatisfaction with the Court's ruling in another case is insufficient to satisfy the objective standard for recusal. Likewise, the fact that the Court dismissed Ground Two, Chapman's allegation of a conflict of interest, in its January 21, 2025, Order is insufficient to satisfy this standard. *See Sammons*, 918 F.2d at 599.

To the extent Chapman takes issue with denial of access to the prison law library and the handling of his mail, the Court has already informed Chapman that these claims "should be brought in a civil rights action, not this proceeding." (ECF No. 22 at PageID 193.)

For these reasons, Chapman's motion to recuse (ECF No. 70) is **DENIED**.

## PROPOSED AMENDED § 2254 PETITION

As noted above, the § 2254 petition that Chapman submitted in Civil No. 1:26-cv-1009 has been filed in this action. (ECF No. 69.) Chapman reiterates the grounds for relief that he raised in his initial § 2254 Petition, as well as new claims of judicial misconduct, the issuance of an illegal warrant, and a lack of subject matter jurisdiction. (*See id.*) Because Chapman did not include these new claims in his § 2254 Petition, the Court construes the amended § 2254 petition as a motion to amend.

Federal Rule of Civil Procedure 15 applies to Chapman's motion to amend. *See* Habeas Rule 12 (stating that "[t]he Federal Rules of Civil Procedure, to the extent that they are not

8

inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules"). Under Rule 15, "the court should freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). When evaluating the interests of justice, the Court considers the following factors: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001); *see Woolbright v. Crews*, No. 18-5131, 2018 WL 7247245, at *4 (6th Cir. July 9, 2018) (considering factors in context of motion to amend § 2254 petition).

"A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (internal quotation marks and citation omitted). Amendment would be futile in the context of a habeas petition where the petitioner's claims are time-barred under § 2244(d) and do not relate back to the original petition. *See Wiedbrauk v. Lavigne*, 174 F. App'x 993, 999-1000 (6th Cir. 2006).

An amendment relates back to the date of the original petition when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). "[W]hen a prisoner files an original petition within the one-year deadline, and later presents new claims in an amended petition filed after the deadline passes, the new claims relate back to the date of the original petition if the new claims share a common core of operative facts with the original petition." *Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 20160 (internal quotation marks and citation omitted). An amendment does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and typer from those in the original pleading." *Id.* (internal

9

quotation marks and citation omitted). Any "new" facts generally may differ only in specificity (not in kind) from those originally alleged. *See Watkins v. Stephenson*, 57 F.4th 576, 581 (6th Cir. 2023).

Here, Chapman's new claims are raised for the first time in the federal habeas proceedings nearly two years after the case was initiated, do not relate back to the original § 2254 Petition, and are untimely. For these reasons, amendment would be futile. Chapman's motion to amend (ECF No. 69) is **DENIED**.

## FEDERAL HABEAS REVIEW STANDARD

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at"

10

an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of

11

rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome a procedural default by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

## ANALYSIS

The following two grounds from Chapman's § 2254 Petition remain before the Court: (1) Chapman's guilty plea was involuntarily entered (Ground One); and (2) Chapman was forcibly

12

committed to the Jackson General Hospital and forced to "take mind-altering drugs" for treatment (Ground Three). (ECF No. 1 at PageID 2-9.)

A. **<u>Ground One: Voluntariness of Plea</u>**

As his first ground for relief, Chapman alleges that he "was under forced anti-psychotic and psychotropic [drugs] at the time of [his] plea agreement hearing." (ECF No. 1 at PageID 6.) According to Chapman, he did not know what was happening during the plea hearing and merely followed his attorney's cues to say yes or no. (*Id.* at PageID 2, 6-7.) Chapman contends that his plea was forced and "compelled by trickery." (*Id.* at PageID 3.) Chapman argues that he "never said or pled guilty or nolo contendere on record." (*Id.* at PageID 7.)

Respondent argues that Chapman has procedurally defaulted this claim for relief because he did not present it to the TCCA during his post-conviction appeal. (ECF No. 27 at PageID 901-02.) On post-conviction appeal, Chapman raised one claim of ineffective assistance, asserting that counsel "should have made sure that [Chapman] was properly evaluated for competency and insanity." (ECF No. 26-4 at PageID 457.) However, in its opinion affirming the dismissal of Chapman's state post-conviction petition, the TCCA noted that "[Chapman] implies that he was not competent and did not understand his guilty plea." *Chapman*, 2023 WL 5572932, at *6. Given that the TCCA did address the validity of Chapman's guilty plea, the Court declines to conclude that Chapman has procedurally defaulted his first claim for relief.

The standard for evaluating the voluntariness of a guilty plea is as follows:

> A defendant who pleads guilty waives a number of federal constitutional rights, including the right to a jury trial and the right to confront his accusers. *Boykin v. Alabama*, 395 U.S. 238, 43 (1969). Because of the importance of these rights, reviewing courts must ensure that the defendant's waiver was knowing and voluntary. We therefore insist that the defendant appreciated the consequences of the waiver, did so without coercion, and understood the rights surrendered. *Brady v. United States*, 397 U.S. 742, 748-50 (1970); *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008). Specifically, guilty pleas "not only must be voluntary

13

> but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. The Supreme Court defines a guilty plea as one "entered by one fully aware of the direct consequences." *Id.* at 755.
>
> While a defendant need not know all the possible consequences of his plea, like the loss of his right to vote or own a gun, or the effect on future sentence[s], he must be aware of the maximum sentence to which he is exposed. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991). And, "[a]t a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)). The satisfaction of these requirements cannot be inferred from the bare fact that the defendant plead guilty, because he still might not have known what he was giving up when he did so. *Boykin*, 395 U.S. at 243.

*Ruelas v. Wolfenbarger*, 580 F.3d 403, 408-09 (6th Cir. 2009) (parallel citations omitted).

Chapman challenged the voluntariness of his plea in his state post-conviction petition, and the post-conviction court denied relief after conducting an evidentiary hearing. Specifically, the post-conviction court concluded:

> After a careful conclusion of the guilty plea proceedings (Exhibit #2), the Court finds that Mr. Chapman did freely, voluntarily, knowingly and intelligently enter his guilty plea with the understanding of the consequences. He indicated under oath twice that he was satisfied with the representation provided by his attorney, Mr. Joshua Phillips, and that he fully understood everything he was doing by entering his guilty plea, including his range of punishment. He also indicated under oath <u>three times</u> that he was guilty of each of the charges to which he was pleading guilty. He further testified during the guilty plea proceeding that no force, pressure or threats had been applied to him to cause him to enter his guilty plea and that he understood what he was doing by pleading guilty.
>
> The Court finds that the advice given and the services rendered by Attorney Joshua Phillips were well within the bounds of generally accepted professional standards. Likewise, nothing presented in the evidence suggests that Mr. Chapman was in any way deceived, pressured or coerced into entering his guilty plea. Likewise, there is no evidence to suggest that the defendant, at the time of his guilty plea, desired to go to trial in his two cases. The Court does credit Mr. Chapman's testimony as being truthful when he stated at the time of guilty plea that he was guilty of each and all of the charges to which he was pleading guilty and that he wanted to plead guilty to the State's plea offer.

> The Court also finds that the defendant was fully advised by the Court and that he fully understood what his sentences would be once the guilty plea was accepted by the Court. He also understood that once his guilty plea was accepted by the Court, that he could not withdraw his guilty plea for any reason. The Court also credits Mr. Chapman's testimony that he "fully understood what he was doing" by pleading guilty on September 7, 2021.
>
> Attorney Joshua Phillips testified at the post-conviction hearing that Mr. Chapman understood what he was doing by pleading guilty and that he wanted to accept the State's plea offer of 13 years to serve as a Range III offender, even though Mr. Chapman qualified as a "career offender." The Court credits Attorney Phillips['] testimony at the post-conviction hearing that Mr. Chapman fully understood what he was doing by pleading guilty.
>
> The Court does not credit Mr. Chapman's testimony at his post-conviction hearing as being truthful to any extent. He testified under oath multiple times that he "never pled guilty" to the charges of which he was convicted. He testified also that he didn't remember saying that he was guilty of anything, which the Court finds is totally incredible and contradicted by the guilty plea proceedings transcript, and the guilty plea forms which Mr. Chapman personally signed.
>
> The Court also finds that Mr. Chapman was found competent to stand trial, and certainly was competent to enter his guilty plea on September 7, 2021. Furthermore, Mr. Chapman testified under oath at his guilty plea that he <u>was not</u> under the influence of alcohol, narcotics, or any other type of drugs or medication that might impair his judgment on that date. The Court credits that testimony as being truthful, which directly contradicts his untruthful testimony at his post-conviction hearing that the Madison County Jail was "forcing" him to take medication.

(ECF No. 26-1 at PageID 335-36 (emphasis in original).) On post-conviction appeal, the TCCA wrote:

> Petitioner implies that he was not competent and did not understand his guilty plea. The post-conviction court found that Petitioner was "found to be competent to stand trial, and certainly was competent to enter his guilty plea on September 7, 2021." Petitioner indicated under oath multiple times that he was guilty of the charges, and Petitioner "testified during the guilty plea proceeding that no force, pressure or threats had been applied to him to cause him to enter his guilty plea and that he understood what he was doing by pleading guilty." The post-conviction court did not credit Petitioner's testimony at his post-conviction hearing "as being truthful to any extent," finding Petitioner's testimony that he never pled guilty incredible and contradicted by the transcript and the forms Petitioner signed. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A petitioner's representations under oath that his guilty plea is

15

knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings." *Id.*

*Chapman*, 2023 WL 5572932, at *6.

Chapman fails to establish that the TCCA's decision affirming the rejection of any claim by Chapman that his guilty plea was not voluntarily entered was contrary to *Boykin* or any other Supreme Court decision. Chapman also fails to establish that the TCCA's decision was an unreasonable application of *Boykin* or was an unreasonable determination of the facts considering the evidence presented in state court.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). When the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia*, 991 F.2d at 326. A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge*, 431 U.S. at 73.

Here, both the post-conviction court and the TCCA reviewed the transcripts of the plea colloquy and the post-conviction evidentiary hearing and concluded that Chapman had been advised of his rights, acknowledged that he was pleading guilty of his own accord and was not coerced into pleading guilty, was not under the influence of any substances that could impair his judgment, and understood the terms and conditions of his plea. (*See* ECF No. 26-3 at PageID 410-

16

46.) The state courts did not credit Chapman's testimony given at the post-conviction evidentiary hearing in light of the plea colloquy transcript. In his § 2254 Petition, Chapman merely restates the arguments that were raised—and rejected—in his state post-conviction proceedings and provides no argument to meet his "heavy burden" to overcome the presumption of correctness attached to the state courts' conclusions regarding voluntariness. *See Garcia*, 991 F.2d at 326.

For these reasons, Chapman's first claim for relief lacks merit and is **DENIED**.

**B.** **Ground Three: Forced Hospitalization and Treatment**

As his third ground for relief, Chapman alleges that he was "illegally taken/kidnapped" from the jail on February 25, 2021, taken to the Jackson General Hospital, tied to a bed, and forcibly medicated with "mind-altering drugs." (ECF No. 1 at PageID 9.) Chapman also alleges that he was "civilly committed" for treatment. (*Id.*)

Respondent argues that Chapman has procedurally defaulted this claim for relief because he did not present it to the TCCA during his post-conviction appeal. (ECF No. 27 at PageID 901-02.) On post-conviction appeal, Chapman raised one claim of ineffective assistance, asserting that counsel "should have made sure that [Chapman] was properly evaluated for competency and insanity." (ECF No. 26-4 at PageID 457.) At no time on post-conviction appeal did Chapman raise any argument regarding forced hospitalization and medication and civil commitment.

In his reply, Chapman vaguely alleges that he could not access the state courts and that counsel "refused to address [his] claims under post-conviction relief." (ECF No. 38 at PageID 1055.) Chapman has failed to show cause and prejudice or a miscarriage of justice to overcome the procedural default. Chapman cannot rely upon *Martinez* to show cause and prejudice because "the rule announced in that case does not extend to claims of ineffective assistance of appellate counsel." *See Balducci v. Spatny*, No. 25-3186, 2025 WL 2743906, at *2 (6th Cir. July 15, 2025)

17

(citing *Davila v. Davis*, 582 U.S. 521, 530-35 (2017)).  Moreover, Chapman fails to show a miscarriage of justice because he pleaded guilty and has not presented new reliable evidence of actual innocence.  For these reasons, Chapman's third claim for relief is procedurally defaulted.

Notwithstanding Chapman's procedural default of this claim, the claim also lacks merit. Federal habeas relief can be granted only if a petitioner demonstrates that he "is in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a).  Chapman's claims regarding forced hospitalization and treatment with civil commitment do not implicate the judgments entered in his criminal proceedings.  "While constitutional rights may be implicated in the forced administration of antipsychotic drugs, depending on the circumstances, . . . [Chapman's] claim of forced administration of antipsychotic drugs, standing alone, is not a challenge to his conviction or sentence" and, therefore, is not an appropriate claim for relief under § 2254.  *See Hayworth v. United States*, Nos. 3:18-cv-430-TAV-HBG, 3:14-cr-017-TAV-HBG-1, 2021 WL 1910084, at *13 (E.D. Tenn. May 12, 2021) (internal citation omitted).  Moreover, while a petitioner may challenge the constitutionality of civil commitment in a § 2254 petition, *see generally Williams v. Meyer*, 346 F.3d 607 (6th Cir. 2003), Chapman is no longer civilly committed as he alleges.  Instead, Chapman is in custody pursuant to the judgments of conviction entered by the Madison County Circuit court after Chapman's guilty pleas and sentencing.  Thus, any challenge to a period of civil commitment that occurred prior to Chapman's guilty pleas and sentencing is moot.

For these reasons, Chapman's third ground for relief is procedurally defaulted, lacks merit, and is **DENIED**.

18

## CONCLUSION

For the foregoing reasons, Chapman's motion to appoint counsel (ECF No. 63), motion to recuse the undersigned (ECF No. 70), and motion to amend his § 2254 Petition (ECF No. 69) are **DENIED**. Chapman's § 2254 Petition is **DENIED** because Ground Three is procedurally defaulted and because Grounds One and Three lack merit. Judgment will be entered for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the § 2254 Petition. Because any appeal by Chapman does not deserve attention, the Court **DENIES** a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[1]

**IT IS SO ORDERED** this 9th day of February, 2026.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[1] If Chapman files a notice of appeal, he must also pay the full $605.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.